Pga-rsqx, J.
 

 The case is before us upon exceptions
 
 to
 
 the Master’s report.
 

 The first exception is, that the commissioner charges John Armfield with the price of the boy Walker, -at S1C00 as an advancement, &c., and the evidence doe„s not support the charge. The intestate reserved the title and declared, if he should survive his son John, the boy was his, and the boy died before the intestate, and before John Armfield. ■ -
 

 
 *144
 
 • Thé commissioner’s report, as to Walker, is-, “that the advances are as follows : To John Ármfield, negro Wal-kér,br, if not, then his hires, for ten or twelve years, hither of which is valued at $1000,” In other words* thé cota* mlssioner refers to the Court to say, as á mattér of laVv, whether Walker was an advancement or not, and if the Court should be of opinion that he was not, “then that hi's hires were, and that they were worth $1000.” We aré óf Opinion, Walker was not an advancement. The proofs show, that he was lent to John Ármfield and not given.— Upon One occasion, when the latter was offered, in Alabama, a very high price for the negro, he wrote to his father, the intestate, to know if he might sell him, and w'héthér
 
 he
 
 would take that price ; the intestate replied, he must not sell him,
 
 he
 
 would not take any price. This we think is conclusive upon the question of an advance* m'eiit.
 
 Cowan v. Tucker,
 
 5Ire. 78. But we are of opinion, that the hires of Walker, while in the possession of th’é son, were an advancement, for which his estate must acc'ount. ' The proofs show, that John Arm-field was engaged in negro trading, and when about to start for thé Southern market, Walker was put into his possession by his father to assist him in his business ; and though h:e continued in possession of him ten or twelve years, no claim was made upon him for his hires by the intestate-Why was this? because the intestate was willing that John should have them — in effect he gave them to him, and John’s estate was increased by them, to their full amount. If he had not had Walker, he W'ould have been obliged to hiré either another negro, or a white man,-to have performed the services rendered by him, whereby his estate would have been so far reduced. Baron CoiHyn, in his Digest, 1st vol., title, administration, let. H. page 480, speaking of advancements, says, “So the heir at law, if he be advanced out of the personal estate,, shall account, though his advancement be only the
 
 use
 
 of fiir-
 
 *145
 
 niture for his life; for it is an advancement
 
 pro tanto’1
 
 For this position he cites Fitzgibbon, g. 285. The hires of Walker were an advancement. As to the estimate put by the commissioner upon the hires, we have no proof that it was too high. John Armfield had his services for ten or twelve years, and it is proved that he was a very valuable slave. This exception is sustained, so far as relates to the advancement of Walker, and the report confirmed as to the hires, The second exception is sustained, so far as interest has been calculated by the commissioner, on the advancements of John Armfield and Polly Hanner, from the death of the intestate. An executor and administrator, from the time he administers, has two years to collect in the assets and settle the estate: no interest during that time is to be paid by him. This exception is sustained and the commissioner will correct his report in this particular, in conformity with this opinion, upon any of the advancements. The third exception is overruled. It is proved by the testimony of Mr. Gorrell and Shannon Wiley, that William Hanner, the husband of Mrs. Polly Hanner, had purchased from Nathan Arm-field, the intestate, a tract of land at the price of $1500, which was secured by two bonds executed by the said Hanner, one for f 1000 and the other for @500. The latter witness states, that, in conversation with Nathan Armfield, the latter stated that Hanner had a hard bargain in the land and he intended to give him up the latter bond, and the former witness, that it was surrendered up by the intestate to Hanner in his presence. The intestate Armfield, then, held a bond upon William Hanner for $500, which he surrendered up to him, that is, gave him. This was a gift by Armfield to his son-in law of $500, and is an advancement, and is so returned by Mrs Hanner, in her list as administratrix.
 

 Pee Curiam. Decree accordingly,